ORDER OF REMAND
GARY P. SULLIVAN, Chief Justice.
A PETITION FOR REVIEW having been filed by Rosalie Owens, biological mother of the subject minors herein, by and through her counsel, Sally K. Hickok, Esq., from an Order issued by The Honorable John Christian, on December 16, 1999, and good cause appearing therefor, the said Petition was granted on February 3, 2000'. A briefing schedule was issued on the same day, requiring Appellant’s brief to be filed on or before February 25, 2000 and Appellee’s brief to be filed on or before March 17, 2000. Notwithstanding Appellant’s statement that, “if the Petition is granted, Appellant will provide more comprehensive briefing regarding the legal issues raised in this case,” the Appellant filed her Notice to Intent to Stand Upon the Lower Court Record on February 23, 2000.
On April 6, 2000, this Court issued an Order to Show Cause due to Appellee’s failure to file a brief or alternative paper. The hearing date on this Order was originally set for April 21, 2000, however, due to the fact that April 21st was Good Friday, this Court continued the matter until May 5, 2000 at 1:30 p.m. On the morning of May 5th, Appellee, through his Lay Advocate, Leighton Reum, contacted this Court for a continuance due to the fact that Mr. Reum had an out of town engagement that had been planned and scheduled for several months. This Court granted *216 the request by taking the matter off its calendar.
Upon filing her Notice of Intent to stand on the lower court record, Appellant stated that, in her opinion, no oral argument was necessary in this matter. This Court has not received any further motions from Appellee, nor has there been an objection filed regarding Appellant’s Notice of Intent. Therefore, this Court, after thorough review of the lower Court record and all of the papers filed in this matter, finds as follows:
1. On June 11, 1996, Holly and Kenneth Anderson, of Wrightwood, CA., made application in the Fort Peck Tribal Court for legal custody of M.M. (dob 08/03/87), M.M. (dob 07/30/91) and M.M. (dob 08/26/92). The appellant and appellee herein are the biological parents of these children. The petition alleged that the three (3) children had been in the custody of the Andersons since on or about May, 1993. Holly is the paternal aunt of the three children. The petition makes the further allegation that the children’s mother had not visited the children for approximately three (3) years and that all of the three children exhibited various signs of neglect when custody was obtained from the children’s father. The affidavit also alludes to the two smaller children as being ‘special needs’ children. The petition concludes with the plea that the Anderson’s be awarded legal custody of the children.
At the time of filing this petition, the Andersons were residents of California. It is believed that the mother was a resident of the Fort Peck Indian Reservation and that the father was a resident of Kansas.
2. The lower Court record is silent from June, 1996 through November, 1997. On December 3, 1997, the father/appellee filed a petition for custody. The record is also silent as to the legal status of the children. On January 9, 1998, a review hearing was held and a written order was issued on February 18, 1998, deeming the children “not neglected”, but making them wards of the Court. This order does not specify in whose physical care and supervision the children were placed.
3. The record is also silent from March, 1998 through December, 1998. A review hearing was held on January 22, 1999, terminating the wardship of the children. However, again, the written order issued on January 25, 1999, fails to mention in whose care, supervision and control, the children were to be placed.
4. An Emergency Hearing was brought on March 19, 1999, deeming the children neglected and abused with custodial supervision placed in the Bureau of Indian Affairs (BIA). The written order, issued on April 21, 1999, makes reference to the children ‘remaining in foster care’ with visitation to the parents. It should be noted at this point that the Tribal Court has made no mention regarding in whose custody the children have been charged.
5. A fact-finding hearing on April 9, 1999 resulted in the children’s continuing wardship in the Court with care and supervision in the B.I.A.
6. On May 4, 1999, the B.I.A. sent a letter to the Guardian ad Litem, stating that the children did not qualify for B.I.A. services due to the fact that the children lacked the one-quarter or more blood quantum to qualify for their services. The letter also requested that the Court’s existing order granting their agency care and supervision of the children be modified accordingly. The Court issue its modified order to reflect this change on May 5, 1999 (the actual date shown on the order is April 5, 1999, which is obviously a typographical error), naming the Department of Social Services as the agency with care *217 and supervision of the children. It is believed that the ‘Department of Social Services’ refers to the Montana state agency.
7. On July 21, 1999, a review hearing was had resulting in the status quo.
8. On October 13, 1999, the Tribal Court conducted yet another review hearing and terminated the wardship, granting permanent ‘care, custody and control’ of the three children to the appellant/mother. As previously noted, the record is not clear as to the legal custodial status of these children prior to the Court making them wards on January 8, 1998. therefore it is not known upon what basis the Court awarded the care and supervision of the children to the appellant/mother. The record is void of a petition for custody by the appellant/mother.
9. On December 6th and 7th, 1999, a final hearing was held pursuant Title VI CCOJ 2000 § 304 and an order issued on December 16, 1999, awarding joint custody to the biological parents, with physical custody to the father/appellee during the school year until one week after the school year has ended, and then, physical custody to the mother throughout the summer months until one week prior to the commencement of the school year. This schedule to continue “in effect for each successive year thereafter”.
10. In its December 16, 1999, order, the Tribal Court makes absolutely no findings of fact, but rather, makes this conclu-sory statement:
“The Court, after reviewing the file and receiving testimonial evidence, together with recommendations from the parties, now finds the best interest (sic) of the above named children would be served by the following: ...”
The order is also void of any reference to child support.
11. On January 10, 2000, the mother files her timely Petition for Review citing error, in that, the Tribal Court: (a) failed to require the father to show proof of his ability to care for the needs of the children (in general), as well as their ‘special needs’; (b) allowed the former judge in this matter to testify as an expert witness; (c) failed to take into account the desires of the children; (d) failed to order a visitation schedule; and (e) allowed Leighton Reum, Lay Counselor, to appear without filing a Notice of Appearance.
12. Title X CCOJ 2000 § 304(b) states: “In determining the best interests of the child, the Court shall consider the relative ability of the parents to provide adequate food, clothing, shelter, medical care, love and emotional support and day-to-day supervision. The Court shall also take into account the desires of the child. Difference in financial means alone shall not be the deciding factor.”
13. The Order of December 16, 2000, fails to reflect whether the Court did, in fact, consider “the relative ability of the parents to provide the basic physical, emotional and financial elements of ‘best interests of the child(ren)’”. Further, the Order fails to state whether any of the children expressed a custodial preference and if so, whether the Court took that stated preference into consideration before making its ultimate custodial order. Finally, the Order also fails to state how much of a role, if any, the relative financial means of the respective parents played in making its final order.
14. To comport with the requirements of § 304(b), our Tribal Courts must make findings that reflect the factual basis for their ‘bottom line’ decisions. In doing so, the Court should set forth the occasion that brings the matter to the Court’s attention (i.e. a non-custodial parent’s petition for custody, etc.), brief basic facts *218 about the children in controversy, a brief history of the living conditions and environment of those children immediately pri- or to the matter coming before the Court, the legal custodial status of the children immediately prior to the pending petition, as much relevant information regarding the adult litigants as is available, as well as all of the elements of ‘best interests of the child’ set forth in as much detail as necessary to place the litigants on notice of how and why the Court made its decision. Paragraphs 1 through 9 of this Order sets forth the chronological history of this case, attempting to answer the relevant questions in order that proper legal conclusions might be drawn. Regrettably, those nine (9) paragraphs, taken directly from the Tribal Court’s prior orders, as well as the entire lower Court file, presents more questions than answer's.
NOW THEREFOR IT IS THE ORDER OF THIS COURT THAT the Order-issued on December 16, 1999, is set aside and the matter is remanded to the Tribal Court to hold further hearings, as necessary, to determine, with the proper specificity, the custodial arrangement, which in the Tribal Court’s judgment, serves the ‘best interests of these children’.
CONCUR: CARROLL J. DeCOTEAU, Associate Justice.